UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MID-CONTINENT CASUALTY CO.,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAMSBURG CONDOMINIUM ASSOCIATION, et al.,<br><br>Defendants. | No. C05-1240P<br><br>ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT |

This matter comes before the Court on cross-motions for summary judgment by Plaintiff Mid-Continent Casualty Company (Dkt. No. 55) and Defendant Titan Construction Corporation (Dkt. No. 52). The Court has reviewed the papers and pleadings submitted by the parties and has heard oral argument on these motions. Following oral argument, the Court indicated in an oral ruling that Plaintiff's motion for summary judgment would be GRANTED. This order sets forth the reasons for the Court's ruling.

**Background**

This is an insurance coverage dispute. In April 1998, Kennydale Vista, LLC ("Kennydale") contracted with Defendant Titan Construction Corporation ("Titan") to construct a nine-building project in Renton, Washington known as the Williamsburg Condominiums. (Dkt. No. 54, Ex. 6). The buildings were completed between July 1999 and March 2000. (Dkt. No. 53, ¶ 7).

ORDER - 1

On November 15, 1999, Kennydale and Titan executed a "Settlement and Mutual Release Agreement" in which the parties generally waived all claims against each other, with the exception that "warranties, if any, implied by law or expressly given by Titan in connection with Work performed and/or materials supplied pursuant to the Contract or other Work not set forth in the Contract but provided by Titan to [Kennydale], or claims for defective or nonconforming Work, shall survive in accordance with their terms." (Dkt. No. 64, Ex. 1).

In April 2003, the Williamsburg Condominium Association ("Williamsburg") filed a construction defect lawsuit in King County Superior Court against a number of defendants, which included Kennydale but did not include Titan.[1] (Dkt. No. 54, Ex. 5). Titan states that "[g]enerally speaking, the damages claims by Williamsburg . . . were primarily related to the siding and framing systems, the decks, the walkways, the roof, and the foundation, and include loss of use and diminution in value." (Dkt. No. 52 at 4). Plaintiff does not dispute this statement. Both sides also agree that Williamsburg alleged "extensive water damages to the structures resulting from construction deficiencies." (Dkt. No. 57 at 2). There are no allegations that construction defects caused damage to property other than the buildings themselves.

In the state-court action, Kennydale brought a third-party complaint against Titan. (Dkt. No. 64, Ex. 3B). Kennydale's third-party complaint raised claims for breach of contract, breach of warranties, indemnification, "errors and omissions," and contribution. Id. at 9, ¶ 9.

Titan had purchased a commercial general liability (CGL) policy issued by Plaintiff Mid-Continent Casualty Company ("Mid-Continent"), which was in effect from June 14, 2002 to June 14, 2003.[2] (Dkt. No. 54, Ex. 1). Among other things, the CGL policy provided coverage for "property

---

[1] The other defendants named in the state court action were D. Allen Bauman, "Jane Doe Bauman," and Polygon Management, Inc.

[2] Mid-Continent also issued an excess liability policy to Titan that provided coverage from August 12, 2002 through June 14, 2003. The excess policy raises the limits of the CGL policy, but adheres to the same general terms of coverage as the CGL policy.

ORDER - 2

damage" caused by an "occurrence." Id. at 28.  The CGL policy defined an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. at 41.

By letter dated November 5, 2004, Mid-Continent conditionally agreed to defend Titan in the state-court action, subject to a reservation of rights.  (Dkt. No. 54, Ex. 11).  In January 2005, Mid-Continent sent a letter to Titan that amended its reservation of rights letter.  Among other things, this letter stated that "[w]hen examining the claim at hand, Mid-Continent Casualty Company must conclude that the alleged damages are not a result of an 'Occurrence' resulting in 'Property damages' or 'Bodily injury' as defined by the general liability policy."  (Dkt. No. 54, Ex. 3 at 14).  However, it is undisputed that Mid-Continent provided a full defense to Titan.  (Dkt. No. 19, ¶ 2.17).

In the state-court action, Titan filed a motion for partial summary judgment seeking dismissal of Kennydale's claims for indemnification, "errors and omissions," and contribution.  Titan argued that "in Washington, construction defect cases sound in contract, not tort" and that Kennydale was therefore limited to claims for breach of contract and breach of warranties.  (Dkt. No. 64, Ex. 4A at 1).  On June 3, 2005, the state court granted Titan's motion for partial summary judgment and dismissed Kennydale's claims for indemnification, "errors and omissions," and contribution.[3]  (Dkt. No. 54, Ex. 7).  On June 13, 2005, the state court entered summary judgment in favor of Williamsburg with respect to various claims against Kennydale for breach of the implied warranties of quality under the Washington Condominium Act.  (Dkt. No. 54, Ex. 8 at 2).  On June 17, 2005, Kennydale settled Williamsburg's claims for $6 million.  Id.

In August 2005, Kennydale and Titan entered into a settlement agreement.  (Dkt. No. 54, Ex. 8).  Pursuant to the settlement, the state court entered a stipulated judgment in favor of Kennydale and

---

[3] In its opposition to Titan's partial summary judgment motion in state court, Kennydale indicated that it was dismissing its claims for "errors and omissions" and contribution and limited its arguments to the indemnification claim.  (Dkt. No. 64, Ex. 4B at 2).

ORDER - 3

against Titan for $4.5 million. (Dkt. No. 52 at 5). Under the settlement, Titan assigned to Kennydale all of its rights for claims against Mid-Continent.[4] Id. at 5. In a footnote in its opening brief, Titan indicates that "National Union, one of developer Kennydale's insurers, was assigned Titan's rights against Mid-Continent . . . ." Id. at 5 n.17.

Mid-Continent filed this action in July 2005 seeking: (1) an order declaring the relative rights and responsibilities of the parties under the insurance policies issued by Mid-Continent to Titan; and (2) an order finding that Mid-Continent owes no duty to indemnify and/or defend Titan under the CGL or excess policies with respect to claims arising out of the underlying litigation brought by Williamsburg at which Titan is a third-party defendant. (Dkt. No. 1). Mid-Continent named a number of defendants in its complaint, including Titan.[5]

Mid-Continent and Titan filed cross-motions for summary judgment. Aside from Titan, none of the other named defendants remaining in this action filed a response to Mid-Continent's summary judgment motion.

**Analysis**

**1.     Summary Judgment Standard**

Rule 56(c) provides, in part, that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Summary judgment is not warranted if a material issue of fact exists for trial. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995). The underlying facts are viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith

---

[4] The record is not clear on whether Titan, which dissolved as a corporation at some point in 2005, had the capacity to enter into this assignment.

[5] Of the defendants named in Mid-Continent's complaint in this Court, the only ones who still remain in this action are Titan, Kennydale, Polygon Management, Mr. and Mrs. Bauman, Certain Underwriters at Lloyds of London, and National Union Fire Insurance Company.

ORDER - 4

1   Radio Corp., 475 U.S. 574, 587 (1986).  "Summary judgment will not lie if . . . the evidence is such

2   that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby,

3   Inc., 477 U.S. 242, 248 (1986).

4   **2.    Applicable Law**

5         The parties do not dispute that Washington law applies to this case.  In Washington, the

6   interpretation of insurance policy language is a question of law.  Allstate Ins. Co. v. Bowen, 121 Wn.

7   App. 879, 884 (2004).  "The policy should be given a fair, reasonable, and sensible construction, as

8   would be given to the contract by the average person purchasing insurance."  Id.

9         The Washington Supreme Court has noted:

10  > Determining whether coverage exists is a 2-step process.  The insured must show the loss falls
    > within the scope of the policy's insured losses.  To avoid coverage, the insurer must then show
11  > the loss is excluded by specific policy language.

12  McDonald v. State Farm Fire & Cas. Co., 119 Wn.2d 724, 731 (1992).  Therefore, the Court first

13  considers the parties' arguments on whether Titan's loss falls within the scope of the Mid-Continent

14  policy's insured losses.

15  **3.    Scope of the Policy's Insured Losses**

16        Titan maintains that Kennydale's claims against Titan fall within the provisions of the CGL

17  policy that provide coverage for "property damage."  The CGL policy provides that the insurer "will

18  pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property

19  damage' to which this insurance applies."  The policy further provides:

20      This insurance applies to . . . "property damage" only if:

21      (1)    The . . . "property damage" is caused by an "occurrence" . . .;
        (2)    The . . . "property damage" occurs during the policy period; and
22      (3)    Prior to the policy period, no insured . . . knew that the . . . "property damage" had
            occurred, in whole or in part.
23
    The term "occurrence" is defined in the policy as "an accident, including continuous or repeated
24
    exposure to substantially the same general harmful conditions."  Washington courts have defined the
25

ORDER - 5

term "accident" in various ways, such as "an unusual, unexpected, and unforeseen happening," <u>Grange Ins. Co. v. Brosseau</u>, 113 Wn.2d 91, 95 (1989), or an "unintended, sudden, unexpected event." <u>Queen City Farms, Inc. v. Central Nat'l Ins. Co. of Omaha</u>, 126 Wn.2d 50, 75 (1994).

Mid-Continent argues that property damage to the condominiums that was caused by Titan's breach of contract or breach of warranties cannot be regarded as "occurrences" under the policy as a matter of law. In response, Titan argues that there is no evidence that it intentionally constructed defective buildings, and that property damage to the buildings that resulted from its breach of contract or warranties may therefore be regarded as an accident.

As a preliminary matter, Titan appears to suggest that Kennydale's claims against Titan were not limited to breach of contract or breach of warranties. It is true that Kennydale's state-court complaint against Titan raised claims for indemnification, contribution, and "errors and omissions," as well as claims for breach of contract and breach of warranties. However, Kennydale's claims against Titan for indemnification, contribution, and "errors and omissions" were dismissed on partial summary judgment by the state court, based on a successful motion by Titan. In addition, under the November 1999 "Settlement and Mutual Release Agreement," Kennydale had previously released all known and unknown claims against Titan, with the exception of claims for breach of warranties or for defective or non-conforming work. As a result, the Court agrees with Mid-Continent that Kennydale's only viable claims against Titan – i.e., claims for which Titan could become legally obligated to pay damages – were for breach of contract and breach of warranties.

In essence, Kennydale's breach of contract and breach of warranties claims were based on allegations that Titan failed to adequately perform its work pursuant to its contract with Kennydale. As Mid-Continent notes, many courts have held that defective workmanship that results in damage to the insured's work product is not an "occurrence" under a CGL policy. <u>See, e.g.</u>, <u>Pursell Constr. v. Hawkeye-Security Ins. Co.</u>, 596 N.W.2d 67, 71 (Iowa 1999) ("We agree with the majority rule and now join those jurisdictions that hold that defective workmanship standing alone, that is, resulting in

ORDER - 6

1  damages only to the work product itself, is not an occurrence under a CGL policy"); Heile v.

2  Herrmann, 736 N.E.2d 566, 568 (Ohio App. 1999) (noting that "the majority of courts in jurisdictions

3  throughout the country[] have concluded that defective workmanship does not constitute an

4  'occurrence'" in CGL policies); R.N. Thompson & Assocs. v. Monroe Guar. Ins. Co., 686 N.E.2d

5  160, 165 (Ind. App. 1997) (similar). As one treatise on insurance law summarizes this issue:

6  
7  
8  
9  
> The question of what constitutes an occurrence in the contractor setting is often litigated. When the claim against the insured contractor is based on the defective quality of the insured's work, generally there is no covered occurrence under the CGL. A commercial general liability policy does not provide coverage for a claim against an insured for the repair of faulty workmanship that damages only the resulting work product. Mere faulty workmanship, standing alone, cannot constitute an occurrence as defined in a commercial general liability policy, nor would the cost of repairing the defect constitute "property damage."

10  20 Eric M. Holmes, Holmes' Appleman on Insurance 2d § 129.2(I)(8) (2002).

11  Similarly, many courts have concluded that a breach of contract by a contractor does not

12  constitute an "occurrence" or "accident" within the meaning of a CGL policy. See, e.g., Burlington

13  Ins. Co. v. Oceanic Design & Constr., Inc., 383 F.3d 940, 945-53 (9th Cir. 2004) (breach of contract

14  claim not an "occurrence" under Hawaii law); Union Ins. Co. v. Hottenstein, 83 P.3d 1196, 1202

15  (Colo. App. 2003) (concluding that "poor workmanship constituting a breach of contract is not a

16  covered occurrence"); American States Ins. Co. v. Mathis, 974 S.W.2d 647, 650 (Mo. App. 1998)

17  ("breaches of contract are not 'accidents' or 'occurrences'" under CGL policy); Yegge v. Integrity

18  Mut. Ins. Co., 534 N.W.2d 100, 102-03 (Iowa 1995) (home buyer's claims against contractor for

19  breach of contract, breach of warranties, and fraud do not constitute an "occurrence" under CGL

20  policy).

21  The parties do not cite any Washington Supreme Court cases that squarely address the

22  question of whether defective workmanship or a breach of contract by a contractor may constitute an

23  "occurrence" or "accident" under a CGL policy. However, the Court concludes that under the

24  circumstances presented here, property damage to the condominiums caused by Titan's breach of

25  contract or breach of warranties cannot be regarded as an "occurrence" or "accident."

ORDER - 7

1    The Court agrees with the reasoning of the courts that have found that a contractor's breach of
2    its contract or warranties does not constitute an "occurrence" or "accident" under a CGL policy.  As
3    the Ninth Circuit recently noted in a similar case, if a contractor "breached its contractual duty by
4    constructing a substandard home, then facing a lawsuit for that breach is a reasonably foreseeable
5    result." Burlington Ins. Co. v. Oceanic Design & Constr., Inc., 383 F.3d 940, 948 (9th Cir. 2004).

6    The Court is also not persuaded by Titan's argument that breaches of its contract or warranties
7    should be regarded as "accidents" because there is no evidence that Titan "intentionally constructed a
8    defective building." (Dkt. No. 66 at 7).  Such an argument is contrary to case law holding that a
9    breach of contract by a contractor does not constitute an "occurrence" or "accident" under a CGL
10   policy.  In any event, it is the insured's burden to demonstrate that its losses fall within the scope of
11   the policy's insured losses.  See, e.g., Overton v. Consolidated Ins. Co., 145 Wn.2d 417, 431 (2002).
12   Here, Titan has not offered evidence suggesting that any breaches of its contract or warranties were
13   accidents.  Indeed, Titan itself argued in its successful motion for partial summary judgment in the
14   underlying state-court action that "there is no evidence any claims result from negligent acts in the
15   performance of work."[6] (Dkt. No. 64, Ex 4A at 12).  As a result, it is difficult to conceive how
16   Titan's breach of its contract or warranties in constructing the condominiums may be regarded as an
17   "accident."

18   Titan also points to Gruol Construction Co. v. Insurance Co. of North America, 11 Wn. App.
19   632 (1974), to support its position that defective work under the contract should be regarded as an
20   "occurrence" or "accident."  In Gruol, the buyer of an apartment building sued the builder for damage

---

[6] Titan has not explicitly argued in this case that its work on the project was negligent.  If Titan were to make such an argument, it would likely be barred by the doctrine of judicial estoppel. See, e.g., Rissetto v. Plumbers & Steamfitters Local 343, 94 F.3d 597, 600 (9th Cir. 1996) ("Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position."); Helfand v. Gerson, 105 F.3d 530, 534-35 (9th Cir. 1997) (same).

1  to the building caused by dry rot. The court indicated that the dry rot "resulted from dirt having been
2  piled against the box sills of the building by backfilling during construction." Id. at 634. The court
3  held that the dry rot came within the definition of "accident" and "occurrence'" as used in insurance
4  policies purchased by the builder. Id. at 634-35.

5  Assuming that the 1974 decision in Gruol represents an accurate statement of current
6  Washington law, Gruol is factually distinguishable from this case. In Gruol, there was evidence in the
7  record that the defective backfilling that caused the dry rot was an accident. Here, Titan has not
8  proffered evidence that the construction defects that caused property damage were accidents; instead,
9  Titan has maintained in the underlying state court action that there is "no evidence any claims result
10 from negligent acts in the performance of work."

11 In its reply brief, Titan also points to Baugh Construction Co. v. Mission Insurance, Co., 836
12 F.2d 1164 (9th Cir. 1988), a case involving the application of Washington law. In Baugh, the court
13 held that an insurer had a duty to defend a construction company in a case where the complaint raised
14 claims for "negligent construction" and "negligent design." Id. at 1169. Baugh is also factually
15 distinguishable from this case. As the Ninth Circuit noted, the contractor in Baugh had been sued for
16 "negligent acts." Id. As a result, the court held that "negligent construction and negligent design
17 claims fall within the definition of a fortuitous event." Id. Here, by contrast, Kennydale did not bring
18 claims for "negligent construction" or "negligent design" against Titan.[7] Instead, Kennydale's claims
19 were for breach of contract and breach of warranties.

20 Finally, as Mid-Continent notes, Washington courts have repeatedly emphasized in recent years
21 that CGL policies are not a "performance bond" for a contractor's work. This principle was stated
22 Westman Industrial Co. v. Hartford Insurance Group, 51 Wn. App. 72, 80 (1988), where the court

---

[7] If Kennydale had asserted a claim in this case for "negligent construction," such a claim would not be viable because "Washington does not recognize a cause of action for negligent construction." Griffith v. Centex Real Estate Corp., 93 Wn. App. 202, 211 (1998).

ORDER - 9

1  noted that "[a] general liability policy is not intended to encompass the risk of an insured's failure to
2  adequately perform work, *i.e.*, a general liability policy is not a form of performance bond, product
3  liability insurance, or malpractice insurance." Washington courts have since restated this principle
4  multiple times in various contexts. See, e.g., Hayden v. Mut. of Enumclaw Ins. Co., 141 Wn.2d 55,
5  64 (2000) (finding that "overriding principle" governing case was that "CGL policy holders . . . have
6  purchased a general liability police, not 'a performance bond, product liability insurance, or
7  malpractice insurance'"); Schwindt v. Underwriters at Lloyd's of London, 81 Wn. App. 293, 302
8  (1996) (noting "Washington courts' reluctance to interpret . . . general liability policies as a form of
9  performance bond, product liability insurance, or malpractice insurance"); Aetna Cas. & Sur. Co., v.
10 M&S Indus., Inc., 64 Wn. App. 916, 921 (1992) ("When an insurer issues a general liability policy, it
11 is not issuing a performance bond, product liability insurance, or malpractice insurance"). This line of
12 cases began after the Washington Court of Appeals' decision in Gruol.

13      Here, Titan is effectively seeking to treat the Mid-Continent CGL policy as a form of
14 performance bond by seeking coverage under the policy for Kennydale's claims for breach of contract
15 and breach of warranties, which arise from Titan's performance under the contract. See, e.g.,
16 Burlington Insurance, 383 F.3d at 949 (noting that "[a]llowing recovery for disputes between parties
17 in a contractual relationship over the quality of work performed would convert [a] CGL policy into a
18 professional liability policy or a performance bond."). The often-stated reluctance of Washington
19 courts to interpret CGL policies as a form of performance bonds lends additional support for finding
20 that Titan's losses are not covered under the Mid-Continent CGL policy.

21      Because the Court finds that Titan's losses do not fall within the scope of the CGL policy's
22 insured losses, it is not necessary to reach the question of whether any of the specific policy exclusions
23 would apply in this case.

24
25

ORDER - 10

**4.     Duty to Defend**

Mid-Continent's complaint requests that the Court enter an order finding that the insurer "owes no duty to indemnify and/or defend Titan" under the CGL or excess policies. However, it is undisputed that Mid-Continent provided a full defense to Titan under a reservation of rights and that the underlying suit has now settled. Under these circumstances, the Court regards Mid-Continent's request for a declaratory judgment as to its duty to defend as moot. See, e.g., OneBeacon Ins. v. Metro Ready-Mix, Inc., 427 F. Supp. 2d 574, 575 (D. Md. 2006) (holding that question of whether an insurer had a duty to defend was moot where underlying case had settled and insurer had provided a defense under a reservation of rights).

**Conclusion**

Consistent with the discussion above and with the Court's prior oral ruling, the Court: (1) GRANTS Plaintiff Mid-Continent Casualty Company's motion for summary judgment; and (2) DENIES Defendant Titan Construction Corporation's motion for summary judgment. Mid-Continent Casualty Company has no duty to indemnify Titan Construction Corporation or its assigns under Insurance Policy 04-GL-000092106 or Insurance Policy No. XS 120952 with respect to claims arising out of the underlying litigation brought by Williamsburg Condominium Association at which Titan was a third-party defendant.

The clerk is directed to provide copies of this order to all counsel of record.

Dated:   October 12, 2006

                                            s/Marsha J. Pechman
                                            Marsha J. Pechman
                                            United States District Judge