# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

MID-CONTINENT CASUALTY COMPANY, an Oklahoma corporation

Plaintiff,

v.

TITAN CONSTRUCTION CORPORATION, a Washington corporation, et al.,

Defendants.

Case No. 05-CV-1240 MJP

ORDER GRANTING DEFENDANT TITAN'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on remand from the Ninth Circuit (Dkt. No. 110), which reversed this Court's grant of summary judgment in favor of Plaintiff Mid-Continent Casualty Company (Dkt. No. 98). On remand, Mid-Continent and Defendant Titan Construction Corporation bring cross-motions (Dkt. No. 140; Dkt. No. 157) renewing and supplementing their original cross-motions for summary judgment (Dkt. No. 52; Dkt. No. 55) and supporting briefs (Dkt. No. 57; Dkt. No. 65; Dkt. No. 66; Dkt. No. 71; Dkt. No. 73). Having reviewed the new motions, the earlier renewed arguments, the parties' responses (Dkt. No. 159; Dkt. No. 162) to one another's new motions, Titan's reply (Dkt. No. 160) in support of its new motion, and all papers submitted in support, the Court GRANTS Defendant Titan's motion for summary judgment.

**Legal Standard**

Rule 56(c) provides, in part, that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

ORDER — 1

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Summary judgment is not warranted if a material issue of fact exists for trial. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995). The underlying facts are viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A party is entitled to summary judgment if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

**Background**

This is an insurance coverage dispute. In April 1998, Kennydale Vista, LLC contracted with Defendant Titan Construction Corporation to construct a nine-building project in Renton, Washington known as the Williamsburg Condominiums. (Dkt. No. 54, Ex. 6.) The buildings were completed between July 1999 and March 2000. (Dkt. No. 53 at ¶ 7.)

In April 2003, the Williamsburg Condominium Association filed a construction defect lawsuit against a number of defendants, which included Kennydale. (Dkt. No. 54, Ex. 5.) Williamsburg alleged "extensive water damages to the structures resulting from construction deficiencies." (Dkt. No. 57 at 2.) There are no allegations that construction defects caused damage to property other than the buildings themselves.

Kennydale brought a third-party complaint against Titan. (Dkt. No. 64, Ex. 3B.) Kennydale's third-party complaint raised claims for breach of contract, breach of warranties, indemnification, "errors and omissions," and contribution. (Id. at 9, ¶ 9.)

Titan purchased a commercial general liability (CGL) policy issued by Plaintiff Mid-Continent Casualty Company, in effect from June 14, 2002 to June 14, 2003. (Dkt. No. 54, Ex. 1.) The CGL policy provided coverage for "property damage" caused by an "occurrence." (Id.

ORDER — 2

at 28.) The CGL policy defined an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Id. at 41.)

In August 2005, Kennydale and Titan entered into a settlement agreement. (Dkt. No. 54, Ex. 8.) Pursuant to the settlement, the state court entered a stipulated judgment in favor of Kennydale and against Titan for $4.5 million. (Dkt. No. 52 at 5.) Under the settlement, Titan assigned to Kennydale all of its rights for claims against Mid-Continent. (Id. at 5.)

Mid-Continent filed this action in July 2005 seeking: (1) an order declaring the relative rights and responsibilities of the parties under the insurance policies issued by Mid-Continent to Titan; and (2) an order finding that Mid-Continent owes no duty to indemnify and/or defend Titan under the CGL or excess policies with respect to claims arising out of the underlying litigation brought by Williamsburg at which Titan is a third-party defendant. (Dkt. No. 1.) Mid-Continent named a number of defendants in its complaint, including Titan.

Mid-Continent and Titan filed cross-motions for summary judgment. (Dkt. No. 52; Dkt. No. 55.) This Court granted summary judgment in favor of Mid-Continent, holding that the damages attributed to Titan did not result from an "occurrence" and therefore does not merit insurance coverage. (Dkt. No. 98.) The Ninth Circuit reversed, holding that the damages attributed to Titan did result from an "occurrence" and that two policy exclusions are inapplicable on the face of the record. (Dkt. No. 110.) The Ninth Circuit remanded the case to this Court to determine whether any of the remaining policy exclusions apply. (Id.)

**Analysis**

The parties do not dispute that Washington law applies to this case. In Washington, the interpretation of insurance policy language is a question of law. Allstate Ins. Co. v. Bowen, 121 Wash. App. 879, 884 (2004). "The policy should be given a fair, reasonable, and sensible construction, as would be given to the contract by the average person purchasing insurance." Id. The Washington Supreme Court has noted:

ORDER — 3

> Determining whether coverage exists is a 2-step process. The
> insured must show the loss falls within the scope of the policy's
> insured losses. To avoid coverage, the insurer must then show the
> loss is excluded by specific policy language.

McDonald v. State Farm Fire & Cas. Co., 119 Wash. 2d 724, 731 (1992). The Ninth Circuit has established that Titan's loss falls within the scope of the Mid-Continent policy's insured losses.[1] (Dkt. No. 110.) The sole question before the Court is whether any policy exclusions apply.

The Ninth Circuit has held that Exclusions 2(k) – "your product" – and 2(l) – "your work" – do not apply. (Dkt. No.110 at 4–5.) The Court will now assess the remaining exclusions. Mid-Continent would bear the burden at trial of proving the applicability of these exclusions, Mut. of Enumclaw Ins. Co. v. T & G Const., Inc., 165 Wash. 2d 255, 268 (2008), and so Mid-Continent must make a "substantial showing" in that regard in order to survive summary judgment.

Exclusion 2(a) – Expected or Intended Injury

Exclusion 2(a) provides that coverage does not apply to "'[b]odily injury' or 'property damage' expected or intended from the standpoint of the insured." (Dkt. No. 54, Ex.1 at 29.) Washington interprets whether damage was "expected or intended" under a subjective standard where, as here, the policy language does not instruct otherwise. Queen City Farms, Inc. v. Central Nat. Ins. Co. of Omaha, 126 Wash. 2d 50, 64–69 (1994) (en banc). Under this standard, it is not enough for Mid-Continent to show that a "reasonable person" in Titan's position would have expected the damage. See id. at 66 ("[T]he average purchaser of insurance would understand that the policy language provides for coverage for damage resulting from most acts of ordinary negligence."). Mid-Continent must show that Titan actually expected or intended the damage to occur. Id. at 69.

---

[1] Mid-Continent takes issue with the Ninth Circuit's analysis of Titan's policy coverage. This Court is bound by the Ninth Circuit's decision. The Ninth Circuit would not have considered exclusions without first finding that coverage existed. In any event, the Ninth Circuit remanded only as to the applicability of exclusions, and so this Court must confine its review to that issue.

ORDER — 4

Mid-Continent asserts that Titan not only expected damage to the Williamsburg Condominiums but already knew of some damage when it purchased its insurance policy. (Dkt. No. 57 at 7–8; Dkt. No.157 at 5–6.) Mid-Continent points to two documents to support this assertion. One, the declaration of Jens Johansen submitted by Titan, is the assessment of a private consultant retained by Williamsburg and says nothing about what Titan knew, expected, or intended when it purchased insurance from Mid-Continent. (Dkt. No. 53.) The other, purportedly the minutes of a Williamsburg board meeting from 2001, is attached to Mid-Continent's brief without an accompanying declaration. (Dkt. No. 73-2.) This document is unauthenticated and inappropriate for consideration on a motion for summary judgment.[2] Orr v. Bank of America, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002) (refusing to consider unauthenticated documents on a motion for summary judgment); Wallace v. Wendy's Int'l, Inc., 2006 WL 3408550, No. CV06-00216MJP, at *2 (W.D. Wash. Nov. 27, 2006) (striking documents that were unattached to a declaration and not self-authenticating). Other than these documents, Mid-Continent offers no evidence that Titan expected or intended damage to the Williamsburg Condominiums. Titan is entitled to summary judgment as to the applicability of Exclusion 2(a).

Exclusion 2(j)(5) – Property Damage Arising out of Titan's Operations

Exclusion 2(j)(5) exempts from coverage "'[p]roperty damage' to[ t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations . . . ." (Dkt. No. 54, Ex. 1 at 31.) This exclusion applies only to damage that occurred at the time Titan was performing operations. Dewitt Const. Inc. v. Charter Oak Fire Ins. Co., 307 F.3d 1127, 1135 (9th Cir. 2002) (applying Washington law to policy language identical, in relevant part, to that of Exclusion 2(j)(5)).

---

[2] It is also hearsay, being an out-of-court statement offered for the truth of its assertion that Titan had already acknowledged damage by September of 2007. See Fed. R. Evid. 801–02.

ORDER — 5

Mid-Continent argues that damage to the Williamsburg Condominiums occurred during Titan's operations (Dkt. No. 157 at 6) and supports this contention with a letter from Williamsburg's counsel to a mediator assigned to the state court case (Dkt. No. 64, Ex. 6A at 135). This document is inadmissible hearsay evidence. It is an out-of-court statement offered to prove the truth of what it asserts: that damage occurred during Titan's operations. Fed. R. Evid. 801–02. Mid-Continent raises no applicable hearsay exception or exemption. Since "[a] trial court can only consider admissible evidence in ruling on a motion for summary judgment[,]" Orr, 285 F.3d at 773, and Mid-Continent offers no other relevant evidence, Titan is entitled to summary judgment as to the applicability of Exclusion 2(j)(5).

Exclusion 2(j)(6) – Property Damage Resulting from Titan's Work

Exclusion 2(j)(6) withholds coverage from "'[p]roperty damage' to[ t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it . . . ." (Dkt. No. 54, Ex. 1 at 31.) However, the exclusion "does not apply to 'property damage' included in the products-completed operations hazard." (Id. at 32.) In other words, Exclusion 2(j)(6) is itself subject to an exception for damages included in the policy's products-completed operations hazard, or PCOH. If damage falls within the PCOH, then Exclusion 2(j)(6) does not apply. The PCOH includes all "'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' except: (1) Products that are still in your physical possession; or (2) Work that has not yet been completed or abandoned." (Id. at 42.)

Mid-Continent asserts that, as a matter of law, a PCOH cannot cover damage to the insured's own product or work. (Dkt. No. 57 at 9.) Nothing in the law of Washington supports this assertion. Cf. Overton v. Consol. Ins. Co., 145 Wash. 2d 417, 431 (2002) (noting that nothing in the definition of "property damage" specifies damage to a third party). The damage at issue is "'property damage' occurring away from" Titan's premises and arising out of Titan's work, (Dkt. No. 54, Ex. 1 at 42), and so it falls within the PCOH.

ORDER — 6

However, the PCOH includes an exception for "[w]ork that has not yet been completed or abandoned." (Id.) In other words, the exception to Exclusion 2(j)(6) has an exception of its own. This nesting of exceptions within exceptions merits a short summary for the sake of clarity:

If Exclusion 2(j)(6) applies, Titan is not entitled to coverage.
    If the PCOH applies, then Exclusion 2(j)(6) does not apply.
        If the damage at issue occurred while Titan's work was still ongoing, then the PCOH does not apply, Exclusion 2(j)(6) does apply, and Titan is not entitled to coverage.

As discussed with regard to Exclusion 2(j)(5), see supra p. 7, Mid-Continent contends that the damage occurred before Titan completed its work (Dkt. No. 157 at 6), falling within the exception to the PCOH and therefore precluding coverage. However, Mid-Continent supports this contention only with inadmissible hearsay evidence. (Dkt. No. 64, Ex. 6A at 135.) Titan disputes Mid-Continent's contention, asserting that no damage occurred until after its work had ended. (Dkt. No. 162 at 13.) However, Titan supports this assertion only with a statement in Williamsburg's state court complaint against Kennydale (Dkt. No. 54, Ex. 5 at 6), also inadmissible hearsay. Neither party, then, makes any evidentiary showing as to the timing of the damage. However, the parties' positions are not symmetrical. Under Celotex, the party without the burden of proof can obtain summary judgment by simply pointing to the other party's failure to make a substantial showing. 477 U.S. at 322–23. Thus, where both parties have moved for summary judgment but neither has produced any admissible evidence, the party without the burden of proof will prevail on summary judgment.

Courts have yet to address the burden of proof in a case like this one, involving an exception to an exception to an exclusion. However, many states have addressed the simpler

ORDER — 7

issue of an exception to an exclusion. A large majority of these courts holds that the burden of proof, which falls on the insured for coverage and shifts to the insurer for an exclusion, shifts back to the insured for an exception to an exclusion. See, e.g., Buell Indus., Inc. v. Greater New York Mut. Ins. Co., 791 A.2d 489, 504–05 (Conn. 2002); Highlands Ins. Co. v. Aerovox Inc., 676 N.E.2d 801, 804–05 (Mass. 1997); Bresee Homes, Inc. v. Farmers Ins. Exch., 227 Or. App. 587, 593 (2009); but see U.S. Fid. & Guar. Co. v. Morrison Grain Co., Inc., 734 F. Supp. 437, 442–43 (D. Kan. 1990) (applying Kansas law and reaching the opposite conclusion), aff'd, 999 F.2d 489 (10th Cir. 1993). Consistency in construction supports this pattern; the exception carves out territory from the exclusion just as the exclusion carves out territory from coverage, and so it makes sense for the burden to shift in the same manner.

The same principle suggests that the burden should shift again, from insured to insurer, in moving from an exclusion's exception – like the PCOH, constituting an exception to Exclusion 2(j)(6) – to that exception's own exception – like damage occurring before the completion of work, constituting an exception to the PCOH. This approach also promotes internal consistency within the insurance policy. Exclusion 2(j)(5) places the burden on the insurer to show that the damage occurred during the insured's operations; it would be bizarre if the burden fell the opposite way as to the same issue in the context of Exclusion 2(j)(6). For these reasons, the Court finds that the insurer, Mid-Continent, has the burden of satisfying the exception (damage before completion of work) to the exception (PCOH coverage) to Exclusion 2(j)(6). Since Mid-Continent has the burden of proof and fails to make a substantial showing, Titan is entitled to summary judgment as to Exclusion 2(j)(6).

Exclusion 2(n) – Recall of Products, Work, or Impaired Property

Exclusion 2(n) provides that coverage "does not apply to[] . . . [d]amages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of: (1) 'Your product'; (2) 'Your work'; or (3) 'Impaired property'; if such product, work, or property is withdrawn or recalled from the

market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it." (Dkt. No. 54, Ex. 1 at 32.) Mid-Continent makes two assertions with regard to this exclusion. First, it asserts that some damages to the Williamsburg Condominiums involved sprinkler systems that were recalled by their manufacturer and for which Titan is accountable. (Dkt. No. 65 at 18.) Second, it asserts that siding on the condominiums requires replacement, and that this is the "functional equivalent" of a recall. (Id.)

Washington law holds that exclusions like 2(n) – called "sistership" exclusions – apply when the insured, alerted to a systemic defect in its product, withdraws that product from the market for fear that the defect will cause further injuries. Olympic S.S. Co., Inc. v. Centennial Ins. Co., 117 Wash. 2d 37, 42–48 (1991). Sistership exclusions apply only to withdrawal of a product by the insured, not by a third party. Id. at 47–48. Neither Williamsburg's rejection of the siding nor the recall of the sprinkler systems by their manufacturer triggers Exclusion 2(n). Mid-Continent does not assert that Titan itself withdrew any product, work, or property from the market. Titan is entitled to summary judgment as to Exclusion 2(n).

Fungus, Mildew, and Mold

Endorsement Form No. ML-12-17(04/01) exempts from coverage "[a]ny costs or expenses associated, in any way, with the abatement, mitigation, remediation, containment, detoxification, neutralization, monitoring, removal, disposal, or any obligation to investigate the presence or effects of any fungus, mildew, mold or resulting allergens . . . ." (Dkt. No. 54, Ex. 1 at 58.) Mid-Continent asserts that Williamsburg's claims in the underlying state court action, which involved water infiltration, were specifically for "damage caused by fungus, mildew, and mold, all of which resulted from Titan's negligent construction." (Dkt. No. 157 at 7.) However, as discussed above, Williamsburg's complaint is inadmissible hearsay. See supra p. 9.

Mid-Continent also points to the declaration of Jens Johansen (Dkt. No. 65 at 19). The declaration does not explicitly mention fungus, mildew, or mold. It does mention "wood rot and

ORDER — 9

decay," (Dkt. No. 53 at ¶ 4), but Mid-Continent makes no factual showing that this rot and decay resulted from fungus, mildew, or mold. Fungus can cause rot and decay, but so can bacteria. THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 469–60 (4th ed. 2000) (defining decay as "[t]he destruction or decomposition of organic matter as a result of bacterial or fungal action"); id. at 1516 (defining rot as "[a]ny of several plant diseases characterized by the breakdown of tissue and caused by various bacteria or fungi").

Finally, Mid-Continent points to the deposition of Mid-Continent adjuster Keith Nye (Dkt. No. 54, Ex. 12). Nye did not assert in the deposition that any fungal, mildew, or mold growth occurred at the Williamsburg Condominiums. (Id. at 22.) He noted only that, "when you have water on wood framing structures, quite often mold ensues . . . ." (Id.)

Mid-Continent provides no factual support for the applicability of the "fungus, mildew, and mold" exclusion. Titan is entitled to summary judgment on that issue.

Known Loss Rule

The known loss rule "relieves an insurer of liability where the insured had knowledge of the risk or loss prior to the time the policy bound." Mut. of Enumclaw Ins. Co. v. USF Ins. Co., 164 Wash. 2d 411, 418 n.2 (2008). Mid-Continent's assertion that Titan knew of the damage to the Williamsburg Condominiums before purchasing its insurance policy is discussed above, in the section addressing Exclusion 2(a). See supra pp. 6–7. For the reasons described in that section, Mid-Continent fails to make a substantial showing that Titan knew of the loss before purchasing its policy. Titan is entitled to summary judgment as to applicability of the known loss rule.

**Conclusion**

Having determined that Plaintiff Mid-Continent fails to raise a material issue of fact as to the applicability of policy exclusions, the Court GRANTS SUMMARY JUDGMENT in favor of Defendant Titan.

Dated: June 5, 2009.

_____
Marsha J. Pechman
U.S. District Judge

ORDER — 11